UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
IN RE:                              )
                                    )
JAMES RIVER COAL COMPANY,           )
et al.,                             )
                                    )
    Debtors.                        )
_____)
                                    )
XL SPECIALTY INSURANCE              )
COMPANY and ONEBEACON               )
INSURANCE COMPANY,                  )
                                    )
    Appellants,                     )
                                    )
    v.                              )   Case No. 3:06-0411
                                    )   JUDGE ECHOLS
JAMES RIVER COAL COMPANY,           )
et al.                              )
                                    )
    Appellees.                      )
```

**MEMORANDUM**

This appeal arises from a Chapter 11 bankruptcy case in which the Bankruptcy Court granted summary judgment (Bankr. Docket Entry Nos. 1788, 1789) in favor of James River Coal Company ("James River") and denied a motion to alter or amend (Bankr. Docket Entry Nos. 2147, 2148) filed by XL Specialty Insurance Company and OneBeacon Insurance Company (collectively "XL"). At issue was an application filed by XL for approval of an administrative priority claim, to which James River objected. In addition to the briefs filed by XL (Docket Entry Nos. 8 & 13) and James River (Docket Entry No. 11), Anthony H.N. Schnelling ("Schnelling"), the Trustee

1

for the James River Unsecured Creditor Liquidating Trust has filed a brief supporting the Bankruptcy Court's rulings. (Docket Entry No. 12).[1]

## I. FACTS

In 2001, James River obtained four Bonds from XL (Bond numbers SB0072875, SB0072876, SB0072877, and SB0071094) to secure James River's workers compensation obligations to the Commonwealth of Kentucky Department of Workers' Claims ("Department").[2] Since the purpose of the Bonds is to secure James River's obligations to pay its workers' compensation claims, if an employee is awarded a workers compensation claim, and if James River fails to pay the claim, the employee can make a claim against the Bonds.

James River paid XL initial premiums on the Bonds totaling $337,824.48. The Bonds were then delivered to the Commonwealth of Kentucky. The Bonds allowed James River to continue to be self-insured for the workers' compensation liabilities under Kentucky law.

---

[1]Both XL and Schnelling request oral argument in their respective briefs (Docket Entry Nos. 8 at 26 & 12 at 8). Having reviewed the submissions filed by the parties, as well as the Orders of the Bankruptcy Court, this Court finds that oral argument will not materially aid the resolution of this case and accordingly the requests for oral argument will be denied.

[2]Prior to this time, James River was self-insured for its workers compensation liabilities and had workers compensation bonds issued by St. Paul Fire and Marine Insurance Company.

2

On or about November 30, 2001, James River executed a Continuous Contract of Indemnity with XL (the "Indemnity Agreement"). The Indemnity Agreement provides that James River will indemnify, exonerate, and reimburse XL for any claims made on the Bonds. Additionally, the Indemnity Agreement provides as follows:

> Now, therefore, in consideration of Surety heretofore and hereafter executing, providing or procuring bonds and as an inducement to such execution by Surety, the Undersigned and the heirs, personal representatives, successors and assigns thereof, jointly and severally, agree: . . . To pay the Surety such premium as Surety shall charge upon execution of the bond(s) and annually in advance thereafter until such time as the Surety's liability under the bond(s) is terminated.

(Bktcy. Docket No. 1666, Exh. 3).

In April 2002, XL sent written notice to the Department and to James River that it was canceling the Bonds effective June 2002. Cancellation of the Bonds, however, did not alter XL's liability to the State of Kentucky pursuant to the Bonds. As between the State of Kentucky and XL, the Bonds are irrevocable and XL remains liable under the Bonds for "future payments of workers' compensation liabilities incurred by the Principal prior to termination or revocation." (Docket Entry No. 11, Attachment 1 at 1-2).

Once the Bonds were cancelled, XL issued a "return of premium" to James River in the total amount of $98,459.08, which represented a refund of the pro rata portion of the "unearned" premium. After reviewing the Bonds and determining that it would not be discharged

3

of its obligations under the Bonds, XL rescinded the refund and billed James River's agent for the premiums. Thereafter, James River purchased workers' compensation insurance elsewhere which it contends allowed it to remain in operation.

To date, XL has not established a reserve for its obligations under the Bonds. Moreover, XL has never had a claim against the Bonds.

On March 25, 2003 (the "Petition Date"), James River, and certain of its subsidiaries, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have operated as "debtors-in-possession" during the pendency of this case.

On April 22, 2004, the Bankruptcy Court entered an Order confirming a Reorganization Plan and discharging the reorganized debtors of all prepetition debts. In addition, the Reorganization Plan and Confirmation Order provided that only executory contracts which were listed on the Contract Assumption Schedule would be assumed by the reorganized debtors. (Plan, ¶ 3.1(a); see also Confirmation Order, ¶ 8). Neither the Bonds nor the Indemnity Agreement is on the Contract Assumption Schedule, nor were either assumed by the reorganized debtor pursuant to any Order of the Bankruptcy Court.

On June 30, 2004, XL filed an Application for Allowance of Administrative Claim (the "Application") seeking allowance of the premiums accrued on the Bonds as an administrative expense under §

4

503(b) of the Bankruptcy Code. Subsequently, the Bankruptcy Court entered Orders granting James River's motion for summary judgment and denying XL's motion to reconsider which effectively denied XL's Application. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo.* Rembert v. AT & T Univ. Card Serv. (In re Rembert), 141 F.3d 277, 280 (6th Cir. 1998). A factual finding is clearly erroneous only when the reviewing court is left with the definite and firm conviction on the entire evidence that a mistake has been made. Id.

With regard to the denial of an administrative expense claim, review is for an abuse of discretion. Volvo Comm. Financial LLC v. Gasel Transportation Lines, Inc. (In re Gasel) , 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005). In undertaking that review, "'[t]he question is not how the reviewing court would have ruled, but rather whether a reasonable person would agree with the bankruptcy court's decision; if reasonable persons could differ as to the issues, then there is no abuse of discretion." Id. at 685-86 (citation omitted).

## III. APPLICATION OF LAW

The bankruptcy code provides that administrative expense claims may be allowed for the "actual necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). "The purpose of

5

this Code section is to encourage third parties to provide the debtor in possession with goods and services essential to rehabilitation of the business." In re Economy Lodging Systems, Inc., 234 B.R. 691, 697 (B.A.P. 6th Cir. 1999). Hence, "[c]laims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants." In re Federated Dept. Stores, Inc., 270 F.3d 994, 1000 (6th Cir. 2001).

In determining whether a claim falls within the ambit of § 503(b), courts employ "the well accepted 'benefit to the estate' test which states that a debt qualifies as an 'actual necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." In re Sunarhauserman, Inc., 126 F.3d 811, 816 (6th Cir. 1997)(citation omitted). "The benefit to the estate test limits administrative claims to those where the consideration of the claim was received during the post-petition period." Id. The "claimant has the burden of proving entitlement to an administrative expense by the preponderance of the evidence" and "must demonstrate that the benefit is 'more than a speculative or potential benefit.'" In re HNRC Dissolution Co., 2006 WL 1477601 *3 (Bankr. E.D. Ky. 2006).

In this case, the Bankruptcy Court found there was no transaction or benefit to the estate in relation to the Bonds post-

6

petition and consequently denied XL's claim for an administrative expense. On appeal, XL raises three issues: (1) whether the Bankruptcy Court erred in holding that XL is not entitled to an administrative claim because there was no post-petition transaction; (2) whether the Bankruptcy Court erred in holding that XL's continued extension of surety credit on behalf of the Debtors did not benefit the estate; and (3) whether the Bankruptcy Court erred in holding that the Debtors did not assume the obligations relating to the Bonds and/or the Indemnity Agreement under the confirmed Plan of Reorganization. Because the first two issues are intertwined, they will be considered together, followed by discussion of the remaining issue.

**A.  Post-Petition Transaction and Benefit to the Estate**

XL claims that the Bonds at issue constitute an administrative expense because they are in the form of executory contracts under which XL continued to provide surety credit under the Bonds on behalf of the Debtors post-petition. (Docket Entry No. 13 at 3). XL also contends that the Bonds provided a benefit within the meaning of § 503(b) or otherwise unjustly enriched the estate because, without them, James River could not continue to do business in Kentucky.

The Bankruptcy Court rejected XL's contention that the Bonds were executory contracts and XL challenges that conclusion on appeal. As a general proposition, a contract is executory if it

7

is a contract "on which performance remains due to some extent on both sides." N.L.R.B. v. Bildisco & Bildisco, 104 S.Ct. 1188, 1194 n.6 (1988). The Sixth Circuit has indicated that while the Bankruptcy Code does not define the term "executory contract," Congress evidently "had in mind the definition of executory contracts set forth" by Professor Countryman who defined the phrase as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re Terrell, 892 F.2d 469, 471 n.2 (6th Cir. 1989) (citing Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)).

In this case, the Bankruptcy Court recognized the proper definition of an "executory contract" and applied that definition correctly to the facts presented before it. The Bankruptcy Court found that James River's obligation under the Bond agreements was to pay the premiums and XL's obligation was to post Bonds. The Bonds were posted and irrevocable. As such XL owed no further performance to James River; its only remaining duty in regard to the Bonds is with the Commonwealth of Kentucky. (Docket Entry No. 1, attachment 6 at 12-13).[3]

---

[3] XL's reliance on In re Evans, 91 B.R. 1003 (Bankr. S.D. Fl. 1989) for the proposition that a surety bond is an executory contract and the basis for an administrative claim is misplaced.

8

Because XL owed no further duty of performance to James River once the Bonds were revoked, a necessary element of an administrative claim under § 503(b) is missing – a transaction with the estate post-petition. "A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate." In re Gasel, 326 B.R. at 687. "If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession." Id. at 687-88.

In this case, XL provided nothing to James River post-petition (the debtor-in-possession) that XL was not already obligated to provide prepetition. XL's obligations to the Commonwealth of Kentucky did not change post-petition as the Bonds had already been revoked and XL's obligation was not changed either by the cancellation of the Bonds in 2002, or the filing of bankruptcy by James River in 2003.

The Bankruptcy Court correctly noted that Clarendon Nat'l Ins. Co. v. Coal Stripping, Inc., 215 B.R. 500 (Bankr. W.D. Pa. 1997) supports its conclusion. At issue in Clarendon was a bond for

---

In Evans, the debtor needed the coverage afforded by the bond in question "in order to continue its operation, operated for a period of time by virtue of the benefit it received, and then sought to avoid paying the premium for the bond." In re Govt. Sec. Corp., 101 B.R. 343, 348 n.3 (Bankr. S.D. Fl. 1989). Here, the facts are markedly different. The essential question presented is also different in that the issue is whether XL is entitled to an administrative priority claim for premiums that allegedly accrued post-petition on Bonds that had been cancelled by XL prepetition.

9

environmental reclamation which had been forfeited by the debtor prepetition as a result of permit violations. After the debtor sought bankruptcy protection, the surety claimed an administrative priority for the premium that arose post-petition on the forfeited bond. The court denied the administrative claim noting that the liability on the bond is the liability of the surety to West Virginia and the fact that the debtor was required by statute to have a bond "does not make the premium an actual and necessary expense of preserving this Debtor's chapter 11 case." Id. at 502. Additionally, the Clarendon court determined the contract between the debtor and surety was not executory because (1) the bond was posted and irrevocable, meaning that the surety owed no further duty to the debtor and (2) "when the only obligation under a contract is to pay money, the contract is not executory." Id. at 502-03; see also, In re Chateaugay Corp., 177 B.R. 716, 182 (S.D.N.Y. 1995)(no post-petition obligation where surety's claim arose out of prepetition worker's compensation bonds and relate to prepetition injuries to debtor's workers); In re Cedar Rapids Meat, Inc., 121 B.R. 562, 574 (Bankr. N.D. Ia. 1990)(citation omitted)("[i]t is 'well-established' that 'where all elements of performance have been accomplished leaving only an obligation to pay money,' there is no executory contract.").

Likewise in this case, the liability of XL to the Commonwealth of Kentucky pursuant to the Bonds was incurred irrevocably

10

prepetition. True, as XL argues, this case is different from <u>In re Clarendon</u> because there, unlike here, the debtor had ceased operations and the "bonds were not needed in order to allow the debtor to continue to operate." (Docket Entry No. 8 at 16). However, as the court in <u>In re Clarendon</u> pointed out, such an "argument is without merit and misses the point" because the bond remained in effect by operation of law until reclamation was performed (or, in this case, worker's compensation claims paid) regardless if debtor pays the premiums. <u>Id</u>. at 502.

XL cites numerous cases which it claims support its contention that there was a post-petition transaction and/or that the existence of the Bonds provided a benefit to the estate. This Court has reviewed those cases and finds them to be inapposite.

For example, XL cites <u>In re United Trucking Service, Inc.</u>, 851 F.2d 159 (6th Cir. 1988) for the proposition that an administrative expense claim can be allowed where the debtor has been unjustly enriched. There, the debtor had entered into an eight-year lease of trailers prior to filing bankruptcy and the lease required the debtor to maintain the trailers in good condition and pay for repairs. The debtor did not maintain the trailers as required, prompting the lessor to seek to recover on an administrative claim. The Sixth Circuit noted that the debtor's failure to maintain and repair the trailers in accordance with the lease obligation benefitted the estate because it allowed the

11

debtor to use the money saved on repairs to continue its operations. As for the amount of administrative expenses, the Sixth Circuit held it "should reflect actual value conferred on the bankrupt estate by reason of wrongful acts or breach of agreements." Id. at 162.

In this case, the Bankruptcy Court found no actual value conferred on the estate post-petition and no wrongful act on the part of the debtor. That finding is not clearly erroneous and as such In re United Trucking is inapposite. While XL argues the Sixth Circuit in In re United Trucking did not limit the recovery for unjust enrichment to situations of debtor wrongdoing (Docket Entry No. 9 at 19), this Court agrees with the Bankruptcy Court's observation that a court should not "expand an exception which the Sixth Circuit clearly meant to limit." (Docket Entry No. 1, attachment 6 at 9). See, In re Economy, 234 B.R. at 697 ("The United Trucking Service Court found unjust enrichment not merely in the fact that the estate failed to pay a creditor and instead used the money elsewhere, but also in the fact that the debtor in possession continued to take advantage of the creditor's property in the post-petition operation of the debtor's business"); In re Cardinal Indus. Inc., 142 B.R. 801, 805 (Bankr. S.D. Ohio 1992) "United Trucking should be limited to fact patterns of a similarly egregious nature").

12

XL's reliance on In re Zagata Fabricators, Inc., 893 F.2d 624 (3rd Cir. 1990) is misplaced because in that case, unlike here, there was a benefit to the estate post-petition: the debtor continued to occupy leased real property post-petition. Similarly, In re Gamma Fishing Co., 70 B.R. 949 (Bankr. S.D. Cal. 1987) is distinguishable because the debtor received post-petition liability insurance coverage which could have been cancelled for non-payment; whereas, in this case, the Bonds which constitute an obligation to Kentucky are irrevocable and became so prior to the filing of James River's petition. Similarly, In re Lease-A-Fleet, Inc., 140 B.R. 840 (Bankr, E.D. Pa. 1992) is inapposite because while there was a lease signed prepetition for use of vehicles by debtor's rental company, the debtor continued to use those vehicles post-petition and that use "was both beneficial and absolutely necessary to its business" because the debtor did not lease any vehicles from another source nor own any vehicles. Id. at 845.

As noted, the facts in this case show no transaction post-petition nor a benefit to the estate post-petition. XL provided nothing to James River post-petition that it was not already obligated to provide. The obligation to the Commonwealth of Kentucky was firmly entrenched, long before the filing of the petition in bankruptcy, and nothing occurred after the filing which could be considered a transaction or benefit to the estate.

13

Given that claims for administrative expenses are narrowly construed, In re Federated, 270 F.3d at 1000, and that a bankruptcy court's denial of an administrative claim under that code section is reviewed for an abuse of discretion, In re Gasel, 326 B.R. at 685, this Court cannot conclude the Bankruptcy Court erred in denying XL's claims as they relate to the Bonds. Because there was no "transaction" as between XL and James River post-petition and no benefit to the estate, XL is "'merely subjected . . . to the kind of unfairness that Chapter 11 evenly distributes among similarly situated creditors . . . and its claims are not entitled to administrative priority." In re Chateaugay Corp., 177 B.R. at 182.

**B.   Assumption of Bond Obligations**

XL argues that regardless of Section 503(b), it has a right to payment of the premiums on the Bonds pursuant to the Reorganization Plan. The Bankruptcy Court rejected this argument because under the Reorganization Plan, James River was only obligated to pay premiums for workers' compensation contracts which were then in effect, not those that had been cancelled.

A Reorganization Plan is construed as a contract and the court looks to contract law in the state in which the plan was confirmed in interpreting the contract. In re Lisenmeyer, 92 Fed. Appx. 101, 102 (6th Cir. 2003). "In construing contracts, the words expressing the parties' intentions should be given the usual, natural and ordinary meaning." Victoria Ins. Co. v. Hawkins, 31 S.W.3d 578,

14

581 (Tenn. Ct. App. 2000). "Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction." Id.

"A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one [and a] strained construction may not be placed on the language used to find ambiguity where none exists." Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare, 368 F.3d 894, 897 (6th Cir. 2004)(applying Tennessee law, citations omitted). "However, '[a] contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions.'" Id. at 897-98.

XL argues that "under the plain language" of the Reorganization Plan its claim based upon the Bonds is unimpaired. (Docket Entry No. 8 at 24). In support of this position, XL points to paragraph 2.4(b) of the Plan which, in relevant part, provides that

> [o]n the Distribution Date, each holder of an Allowed Other Secured Claim shall, in full and complete settlement and satisfaction of such claim, at the sole option of the reorganized Debtors, (1) have such Claim be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code (which shall be the treatment with respect to Reclamation and other Surety Bonds, and the reorganized Debtors shall execute the New Surety Agreements)[.]

(Plan ¶ 2.4(b)).

15

Leaving aside that the argument about whether a claim is assumed by the Plan has nothing to do with a claim under 11 U.S.C. § 503(b) for administrative expenses (the basis under which XL sought payment in the Bankruptcy Court), XL's excerpted provision of the Plan ignores that which is explicit in the Plan. Sureties are specifically defined in the Plan. In fact, the Sureties are identified by name in the Plan and, with regard to XL and OneBeacon, the Plan provides that XL and OneBeacon are included in the definition of sureties "only with respect to bonds that have not been terminated as of the confirmation date." (Plan ¶ 1.1(101)). Simply put when referring to surety or sureties,[4] the Plan contemplates the inclusion of XL and OneBeacon only with regard to bonds then in existence, not those that have been cancelled.[5] Moreover, ¶ 1.1(78) defines "Reclamation and Other Surety Bonds" as "surety agreements in effect as of the date of the Disclosure Statement between a Debtor and a third party surety" and

---

[4]The Plan provides that "each term stated in either the singular or the plural shall include both the singular and the plural[.]" (Plan ¶ 1.2).

[5]Interestingly, the Order confirming the Plan has a specific paragraph titled "Reclamation and other Surety Bonds" which provides:
> The Sureties have not objected to confirmation of the Plan. Therefore, the Reclamation and Other Surety Bonds are hereby reinstated; provided, however, that any bonds previously terminated are not hereby reinstated.

(Docket Entry No. 10, attachment 9 at 24). Other than the claim for administrative expenses, the Court does not know if XL challenged the Plan.

16

the Bonds in this case, being cancelled pre-petition, were therefore not in effect as of the date of the Disclosure Statement.

The Bankruptcy Court did not err in concluding that XL's claim to premiums was not assumed in the Reorganization Plan.

## IV. CONCLUSION

On the basis of the foregoing, the Orders of the Bankruptcy Court granting Plaintiffs/Appellees' Motion for Summary Judgment (Bankr. Docket Entry Nos. 1788, 1789) and denying Defendants/Appellants' Motion to Alter or Amend (Bankr. Docket Entry Nos. 2147, 2148) will be affirmed, the requests for oral arguments will be denied, and this case will be dismissed.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE